UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
CARLOS GERMOSIN, JOSE DIAZ and
KELVIN ESPINAL-RODRIGUEZ,

                                    Plaintiffs,

            – against –

KEITH TENEYCK, Individually and as a Town of
Clarkstown Police Officer,

                                    Defendant.
-------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 10-CV-5675 (CS)

<u>Appearances:</u>

William A. Gerard, Esq.
Gerard & Weissman
Chestnut Ridge, New York
*Counsel for Plaintiffs*

Frances Dapice Marinelli, Esq.
Joseph A. Maria, P.C.
White Plains, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

Before the Court is Defendant's Motion for Summary Judgment.  (Doc. 20.)  For the

following reasons, Defendant's Motion is GRANTED.

I.      **BACKGROUND**

The following facts are based upon the parties' Local Civil Rule 56.1 statements and

supporting materials, and are undisputed except as noted.  I set forth only those facts relevant to

my decision.

On Sunday, February 4, 2006, at approximately 1:40 AM, Plaintiffs Carlos Germosin,

Jose Diaz, and Kelvin Espinal-Rodriguez arrived at the White Castle restaurant on Route 59 in

Nanuet, New York.  (Ps' 56.1 ¶ 1; *see* Marinelli Aff. Ex. J ("Security Video").)[1]  Plaintiffs had

previously been at a bar for about two hours.  (Ps' 56.1 ¶ 2.)  Mr. Germosin's sister, Ivelisse

Ulloa, and a friend, Gladys Enriques, accompanied Plaintiffs at both the bar and the White

Castle.  (*Id.* ¶ 3.)

When they arrived at the White Castle, Mr. Germosin, Mr. Espinal-Rodriguez, Ms. Ulloa

and Ms. Enriques went inside to order food.  (*Id.* ¶ 5.)  Mr. Diaz stayed in the car.  (*Id.*)  While

the group waited to order, an individual either punched or bumped Mr. Germosin in the chest.

(*Id.* ¶ 6.)  After this individual started to argue with Mr. Germosin and made racially derogatory

remarks, he asked Mr. Germosin, "Why don't you come outside?"  (*Id.*)  Mr. Germosin watched

as this individual walked into the parking lot, where he then took his shirt off and was joined by

three other men who had been waiting in a parked car.  (*See id.* ¶¶ 7-8; Security Video.)  This

prompted Mr. Germosin and Mr. Espinal-Rodriguez to follow this individual into the parking lot

and go to Plaintiffs' car to rouse Mr. Diaz, who had fallen asleep in the back seat.  (Ps' 56.1 ¶¶ 7-

8.)  Mr. Germosin and Mr. Espinal-Rodriguez woke Mr. Diaz because they expected that there

would be a fight.  (*Id.* ¶ 9.)

A surveillance video of the White Castle parking lot, (*see* Security Video), showed the

following:  Mr. Germosin and Mr. Espinal-Rodriguez exited the White Castle, walked to the car

in which Mr. Diaz was sleeping and opened the back door.  Mr. Germosin and Mr. Espinal-

Rodriguez then walked towards Mr. Germosin's antagonist and the men who were with him.

Mr. Germosin and Mr. Espinal-Rodriguez stood a few feet apart from the other group for about

ten seconds.  During this time, Mr. Diaz emerged from the back of the car in which Plaintiffs

---

[1] "Ps' 56.1" refers to Plaintiffs' Rule 56.1 Responsive Statement.  (Doc. 31.)  "Marinelli Aff." refers to the Affidavit of Frances Dapice Marinelli.  (Doc. 22.)

drove to the White Castle and walked directly towards the other group of men.  Mr. Diaz stood

between his co-Plaintiffs and the other group for a few seconds, and then everybody began to

fight.  Due to video quality and camera angles, the Court is unable to discern who threw the first

punch.

      Defendant, a Town of Clarkstown police officer, and at least three other officers who are

not defendants in this case, were dispatched to the White Castle to investigate the incident.  (Ps'

56.1 ¶ 11.)  When Defendant and the other officers arrived at the White Castle, the group of

individuals who were fighting Plaintiffs attempted to drive the wrong way out of the parking lot

entrance, and Plaintiffs went inside the restaurant.  (*See* Marinelli Aff. Ex. D ("Germosin Dep."),

at 34.)  Plaintiffs claimed that they saw the officers talk to the other group, take some members

of the other group to an ambulance, (*see* Marinelli Aff. Ex. F ("Espinal-Rodriguez Dep."), at 56),

and then enter the White Castle.  Mr. Diaz testified that when the officers entered the White

Castle, one of the officers asked Plaintiffs what happened, to which Mr. Germosin responded

that a member of the other group started the fight by hitting Mr. Germosin while Plaintiffs were

in line and then that individual made inflammatory remarks and called Mr. Germosin outside.

(*See* Marinelli Aff. Ex. E ("Diaz Dep."), at 36-37.)[2]  Defendant stated he would watch the

security video and walked into a back room.  (*See id.* at 37; Germosin Dep. 40.)  When

Defendant returned from the back room, he asked Plaintiffs which one of them had worn the red

shirt, and upon Mr. Germosin stating that he wore the red shirt, asserted that Mr. Germosin

started the fight.  (*See* Diaz Dep. 37; Germosin Dep. 41-42.)  Defendant and the other officers

thereafter arrested Plaintiffs.  (*See* Diaz Dep. 37; Germosin Dep. 41-42; *see also* Security Video.)

---

[2] Mr. Germosin did not describe any such conversation with Defendant, (*see* Germosin Dep. 40), and denied
speaking to the officers other than Defendant, (*see id.*).

Although during his deposition – which was taken over seven years after he arrested Plaintiffs – Defendant could recall little of the White Castle parking lot fight and his investigation thereof, (*see* Marinelli Aff. Ex. G ("Teneyck Dep."), at 19-20, 24, 26, 31, 33, 38), Defendant's police report, which contains information he gathered at the time of and shortly after the incident, (*see id.* at 12, 22-23), states as follows:

> Off at White Castle reference a 112.  Spoke with v1-Alberechtsen who stated that A1, A2 and A3 had attacked him, V2 and V3 after they exchanged words outside of the establishment.[3]  V1 further stated that A1 struck him with an object believed to be a bottle or a metal belt buckle.  These actions caused V1 to suffer lacerations [a]bove his left eye and his left ear.  During this time A2 and A3 were fighting with V2 and V3 [c]ausing V2 to suffer a small laceration to his right hand.  Nanuet Ambulance on scene and both parties refused medical [a]ttention.[4]  A1, A2 and A3 were placed under arrest and secured in physical units 225, 221 and 318 respectively.  Area checked negative for a bottle but did reveal a belt with a metal buckle which appeared to be the object used to strike V1.  Belt was vouchered and placed in evidence.  Spoke with PR1, the night manager at White Castle who stated that she did not see the altercation but that it was captured to the store's security cameras.  PR1 was not able to provide a copy of the video at this time but would have the day manager burn a copy and leave it to [be] picked up.  A1, A2 and A3 were transported to 20 Maple Ave where they were searched and placed in cells 2, 4, 6.  Arrest datas taken, jail logs started and property envelope completed.  Charges typed and signed.  147 on all parties were negative.  A1, A2 and A3 in cells waiting processing.  NFR.

(Police Report 8.)

At some point on February 4, 2006, Defendant signed a felony complaint charging Mr. Germosin with second degree assault, in violation of New York Penal Law § 120.05, and all Plaintiffs with disorderly conduct, in violation of New York Penal Law § 240.20.  (*See* Marinelli Aff. Ex. K ("Charging Documents"), at 2-5.)  A Supporting Deposition signed by Brett Shelby,

---

[3] "A1" is Mr. Germosin, "A2" is Mr. Diaz and "A3" is Mr. Espinal-Rodriguez.  (*See* Marinelli Aff. Ex. H ("Police Report"), at 1.)

[4] At his deposition, Defendant explained that refusing medical attention meant individuals refused to be transported to the hospital, but did not mean that they refused medical attention from the ambulance corps and the paramedics at the scene.  (*See* Teneyck Dep. 76-77.)

who was among the group of individuals that fought Plaintiffs, (*see* Police Report 1), asserts that the facts in the Felony Complaints "stated to be on information furnished by me are true upon my personal knowledge," (Charging Documents 1).  The Felony Complaints say that Plaintiffs were in a fight in the White Castle parking lot and that Mr. Germosin struck someone with a metal belt buckle, causing lacerations, but no particular facts in the Felony Complaints are attributed to Mr. Shelby.  (*See id.* at 2-5.)  Plaintiffs were released on bail in the late morning or early afternoon of February 4, 2006.  (*See* Diaz Dep. 49-50; Germosin Dep. 52.)  The charges against Plaintiffs were dismissed on July 25, 2007.  (*See* Ps' 56.1 ¶ 20; Marinelli Aff. Ex. L.)

Plaintiffs filed this action on July 26, 2010, asserting a claim under 42 U.S.C. § 1983 for malicious prosecution and a claim under 42 U.S.C. § 1985 for conspiracy to deprive Plaintiffs of equal protection of the laws.[5]

## II.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant

---

[5] As discussed at the Initial Conference, (*see* Minute Entry 1/10/2011), Plaintiffs did not bring a Section 1983 false arrest claim because the three-year statute of limitations had run by July 2010, *see McClanahan v. Kelly*, No. 12-CV-5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014).

bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Where, as here, affidavits are used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### B.  Plaintiffs' Section 1983 Malicious Prosecution Claim

To prevail on their Section 1983 malicious prosecution claim, Plaintiffs must establish

the elements of a malicious prosecution claim under New York law.  *See Manganiello v. City of

N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010).  To establish a malicious prosecution claim under

New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding

against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause

for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."

*Id.* (internal quotation marks omitted).  Defendant argues that Plaintiffs have not adduced facts

that could establish or create a genuine dispute as to the third and fourth elements of their

malicious prosecution claim.  (*See* D's Mem. 18-19.)[6]

#### 1.        Probable Cause

"[T]he existence of probable cause is a complete defense to a claim of malicious

prosecution in New York," *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003), but the

defendant must have possessed probable cause as to each offense charged, *see Posr v. Doherty*,

944 F.2d 91, 100 (2d Cir. 1991).  "In the context of a malicious prosecution claim, probable

cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify

a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the

manner complained of."  *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation

marks omitted); *see Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *5

(S.D.N.Y. Feb. 16, 2011) ("[P]robable cause is evaluated under an objective standard," under

which "courts look to the information available to the law enforcement officer . . . and consider

[6] "D's Mem." refers to Memorandum of Law in Support of Defendant Keith Teneyck, Individually and as a Town of
Clarkstown Police Officer's Motion for Summary Judgment Pursuant to Rule 56.1.  (Doc. 23.)

the totality of the circumstances.") (internal quotation marks omitted).  "[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the . . . arrest."  *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, at *10 (E.D.N.Y. Sept. 2, 2009) (internal quotation marks omitted).  If, however, "probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'"  *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

Plaintiffs' Section 1983 claim must be dismissed because Defendant possessed probable cause to charge all Plaintiffs with disorderly conduct and Mr. Germosin with second degree assault.  According to Defendant's police report,[7] one of the putative victims, Mr. Alberechtsen, told Defendant that Plaintiffs attacked him and two other individuals in the White Castle parking lot after the parties "exchanged words," and that Mr. Germosin struck him "with a bottle or metal belt buckle."  (Police Report 8.)  The report also notes that the officers recovered "a metal buckle which appeared to be the object used to strike" Mr. Alberechtsen and that Mr. Alberechtsen had "lacerations above his left eye and his left ear."  (*Id.*)

"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:  He engages in fighting or in violent, tumultuous or threatening behavior."  N.Y. Penal Law § 240.20(1).  Based on Mr. Alberechtsen's assertions, Defendant had reason to believe that Plaintiffs engaged in a fight in a

---

[7] Information provided by a witness and contained in Defendant's police report "is only considered by the Court for the effect it had on [Defendant] in [his] probable cause analysis, and not for the truth of the matters asserted." *Jenkins v. City of N.Y.*, No. 10-CV-4535, 2013 WL 870258, at *2 (S.D.N.Y. Mar. 6, 2013).  Defendant's own observations are admissible for their truth.  *See id.*

public parking lot, which is sufficient to establish probable cause as to disorderly conduct.  *See Espada v. Schneider*, 522 F. Supp. 2d 544, 552 (S.D.N.Y. 2007) (involvement in street fight provided probable cause for disorderly conduct arrest); *People v. Adilovic*, 950 N.Y.S.2d 724, 724 (App. Term 2012) (unreported disposition) (roadside fight created sufficient threat of public disorder, despite lack of evidence that any passerby saw fight, because location of fight made it sufficiently likely that another driver would see fight).

    "A person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05(2).  Based on Mr. Alberechtsen's assertions and physical appearance, Defendant had reason to believe that Mr. Germosin hit Mr. Alberechtsen on his head and face multiple times with a belt buckle and that this attack caused the lacerations above Mr. Alberechtsen's left eye and ear.  When a belt is used to strike another person, as Defendant had reason to believe happened here, the belt can constitute a dangerous instrument.  *See Clarke v. City of N.Y.*, No. 96-CV-5762, 1999 WL 608857, at *7 (E.D.N.Y. July 22, 1999) ("New York courts have found that a belt can constitute a dangerous instrument . . . ."); *People v. Curtis*, 635 N.Y.S.2d 186, 187 (App. Div. 1995) ("The trial court properly declined to charge assault in the third degree as a lesser included offense of assault in the second degree, there being no reasonable view of the evidence that the braided belt used to pummel the victim was not a dangerous instrument . . . or that defendant did not use the belt in repeatedly striking the victim.") (citations omitted); *People v. Rollins*, 503 N.Y.S.2d 166, 167 (App. Div. 1986) (belt buckle used to repeatedly strike an individual can constitute dangerous instrument); *see also* N.Y. Penal Law § 10.00(13) ("'Dangerous instrument' means any instrument . . . which, under the circumstances in which it is used . . . is readily capable of

9

causing death or other serious physical injury."). Lacerations, such as those Defendant saw

above Mr. Alberechtsen's left eye and on his left ear, can constitute a "physical injury,"

particularly when the victim was hit in the head with a hard object. *See Gillis v. Edwards*, 445 F.

Supp. 2d 221, 238 (N.D.N.Y. 2006) (laceration to elbow constitutes physical injury under N.Y.

Penal Law § 120.05); *People v. Bernier*, 719 N.Y.S.2d 186, 187-88 (App. Div. 2001) (not

unreasonable for jury to conclude that "abrasion-type cut on his cheek and a deep bone bruise"

which resulted from punch and caused pain constituted "physical injury"); *see also* N.Y. Penal

Law § 10.00(9) ("'Physical injury' means impairment of physical condition or substantial

pain."). Finally, the circumstances of an attack, such as when a suspect hits an individual's face

and head with a hard object, permit the inference that the suspect intended to cause physical

injury. *See Matter of Marcel F.*, 650 N.Y.S.2d 274, 275 (App. Div. 1996) ("Here, the intent to

cause physical injury can be inferred from the appellant's actions of throwing two punches in the

direction of the police officer's face."); *People v. Williams*, 986 N.Y.S.2d 868, 868 (App. Term

2014) (unreported disposition) ("[D]efendant's intent to cause physical injury can be inferred

from his act of punching the complainant in the face and head."). Accordingly, based on the

information received from Mr. Alberechtsen, Defendant had probable cause to charge Mr.

Germosin with second degree assault.

Plaintiffs argue, however, that it was unreasonable for Defendant to credit Mr.

Alberechtsen's version of events – and, therefore, Defendant did not possess probable cause –

because: 1) Mr. Germosin told Defendant that the other group started the fight; 2) the other

group attempted to exit the White Castle parking lot via the entrance when the police arrived; 3)

Defendant did not interview White Castle employees who could have provided an accurate

account of the fight[8]; 4) Defendant viewed the surveillance video and it supported Plaintiffs' version of events; 5) Defendant attempted to persuade Mr. Germosin to implicate Mr. Diaz as Mr. Alberechtsen's assailant[9]; and 6) Mr. Germosin's sister, Ms. Ulloa, called the police to report the fight.[10]  (*See* Ps' Mem. 5-6.)  Plaintiffs' arguments are unpersuasive.

Unless contradictory evidence is readily apparent, an officer can base probable cause on a putative victim's version of a fight and the putative victim's "visible injuries, notwithstanding the alleged assailant's cries of innocence."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001); *see Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *LaDoucier v. City of N.Y.*, No. 10-CV-5089, 2011 WL 2206735, at

---

[8] Plaintiffs' assertion that Defendant did not interview White Castle employees is not supported by the deposition testimony to which they cite, (*see* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Ps' Mem."), (Doc. 30), at 5; Diaz Dep. 35-36), and is contrary to the Police Report, (*see* Police Report 8 ("Spoke with PR1, the night manager . . . who stated that she did not see the altercation but that it was captured by the store's security camera.")).  Moreover, once Defendant had probable cause to arrest Plaintiffs, he was "not require[d] . . . to follow every lead, 'explore and eliminate every theoretically plausible claim of innocence,' or resolve all doubts about [the putative] victim's story before effecting an arrest or pursuing a prosecution."  *Virgil v. Town of Gates*, 455 F. App'x 36, 40 (2d Cir. 2012) (summary order) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *accord Morgan v. City of N.Y.*, No. 12-CV-704, 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014); *Williams v. City of N.Y.*, No. 10-CV-9594, 2012 WL 547508, at *9 (S.D.N.Y. Feb. 17, 2012).

[9] Plaintiffs' argument that probable cause is "belie[d]" by Defendant's attempt to persuade Mr. Germosin to implicate Mr. Diaz, on the theory that it shows that Defendant did not subjectively believe there was probable cause to charge Plaintiffs, is irrelevant to the probable cause analysis.  *See Michaels*, 2011 WL 570125, at *5 ("[P]robable cause is evaluated under an objective standard . . . .").  Further, even if the standard were subjective, such an interrogation technique reveals little about the officer's beliefs.

[10] It is hard to imagine, and Plaintiffs do not explain, how or why Ms. Ulloa reporting the fight would negate probable cause.  This fact might indicate that Ms. Ulloa believed her brother and his friends had done nothing wrong, or that she was concerned they would get hurt in the brawl, but there is no indication Defendant even knew that Ms. Ulloa was the one who called the police, let alone why.  The police report indicates that a different person called the police.  (*See* Police Report 1 (listing Christine Namorin as the "Person Reporting").)  Further, Mr. Germosin's testimony that Ms. Ulloa told him that she called the police, (*see* Germosin Dep. 34), is hearsay and therefore cannot be considered for its truth, *see Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).

*3-4 (S.D.N.Y. June 6, 2011) (probable cause supported by claim of putative victim and other

eyewitnesses despite contrary protestations by plaintiff); *Bradley v. Jusino*, No. 04-CV-8411,

2009 WL 1181617, at *8 (S.D.N.Y. May 4, 2009) ("[T]he circumstances under which the Court

of Appeals has expressly disavowed any duty to investigate are those in which an officer

effectuates an arrest based upon the statement of a complaining witness over the arrestee's

protestations of innocence."), *aff'd* 374 F. App'x 144 (2d Cir. 2010) (summary order); *Moscoso*

*v. City of N.Y.*, 92 F. Supp. 2d 310, 313 (S.D.N.Y. 2000) ("[C]laim of assault made by one

participant in an altercation, supported by evidence of significant injury, can constitute probable

cause for the arrest of the other, uninjured, participant notwithstanding the latter's claims of self-

defense."); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is

well-established that a law enforcement official has probable cause to arrest if he received his

information from some person, normally the putative victim or eyewitness, who it seems

reasonable to believe is telling the truth.").

     No such contradictory evidence would have been apparent to an objectively reasonable

officer in Defendant's position.  First, the statement that Mr. Diaz attributes to Mr. Germosin –

that a member of the other group started the fight by bumping into him, making inflammatory

remarks and then walking outside – did not contradict Mr. Alberechtsen's version of events, (*see*

Police Report 8 (Plaintiffs "attacked him, V2 and V3 after they exchanged words outside of the

establishment")), and, in any event, would not have given Defendant any reason to doubt that

Plaintiffs engaged in a fight in the White Castle parking lot or that Mr. Germosin struck Mr.

Alberechtsen with a belt buckle.  That is, because neither disorderly conduct nor second degree

assault requires that Plaintiffs started the fight, *see United States v. Alston*, No. 98-CR-176A,

2007 WL 2746901, at *4 (W.D.N.Y. Sept. 19, 2007) (rejecting self-defense claim to second

degree assault violation where supervised releasee stabbed individual even though releasee was first shoved by the other individual), *aff'd* 295 F. App'x 474 (2d Cir. 2008) (summary order); N.Y. Penal Law § 240.20(1) (one can be guilty of disorderly conduct by, among other elements, "engag[ing] in fighting"), the mere fact that the other group instigated the brawl would not eliminate probable cause to charge Plaintiffs, *see Rennols v. City of N.Y.*, No. 00-CV-6692, 2003 WL 22427752, at *3-4 & n.1 (E.D.N.Y. Oct. 23, 2003), *aff'd on other grounds*, 124 F. App'x 66 (2d Cir. 2005) (summary order). Further, as discussed, Defendant was not obligated to believe Plaintiffs' version of events over the other group's. *See Moscoso*, 92 F. Supp. 2d at 314 (officer "was under no duty, once probable cause was found to exist, to credit the plaintiff's protestations of self-defense").

Second, the other group's attempt to flee might demonstrate their concern that they might be arrested for their involvement in the fight (or perhaps would just evidence their desire to get away from Plaintiffs), but would do nothing to dispel probable cause as to Plaintiffs' involvement in the fight.[11]

Plaintiffs' argument that the security video would have exculpated them when viewed by an officer investigating the fight is belied by the actual video. (*See* Security Video.) While the video shows that a member of the other group touched Mr. Germosin on the chest in an unwelcome manner, it also shows that the other individual left the White Castle. Mr. Germosin and Mr. Espinal-Rodriguez followed this individual into the parking lot a few seconds later,

---

[11] It is unclear whether Plaintiffs' injuries would have been visible to Defendant, (*see* Germosin Dep. 55 (only injuries were "some bruises" but no explanation as to where those bruises were on Mr. Germosin's body or when they appeared); Diaz Dep. 54 (only injuries were bruises somewhere on Diaz's head and hip but no explanation where or when bruises appeared on head)), and the only injury of which any Plaintiff complained to the officers was consistent with having punched somebody, (*see* Espinal-Rodriguez Dep. 67-68 (complained to arresting officer about his hand being in pain and swollen)). Even if Plaintiffs' injuries were visible, however, they would not have negated probable cause because the injuries were consistent with Plaintiffs having engaged in a street fight.

roused Mr. Diaz and then walked over to the other group. Rather than being exculpatory, the video shows that Plaintiffs – although potentially provoked in the restaurant – voluntarily walked outside with the apparent intent to fight the other group. Because it is not clear, however, whether Defendant watched the video – while Defendant told Plaintiffs he was going to watch the video and walked into a back office where he could have watched the video, the Police Report only indicates that Defendant was unable to retrieve a copy of the video, (*see* Police Report 8), and Defendant did not remember watching the video, (*see* Teneyck Dep. 37) – and the video would support probable cause, I (consistent with my obligation to view the facts in light most favorable to Plaintiffs)[12] do not consider it in the probable cause analysis.[13]

Defendant thus possessed probable cause to charge Mr. Germosin with second degree assault and all Plaintiffs with disorderly conduct, and the Section 1983 malicious prosecution claim must be dismissed.

Further, even if Defendant did not possess probable cause to charge Plaintiffs, he would be entitled to qualified immunity because the same facts previously discussed support a finding of arguable probable cause. *See Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order) (defendant entitled to qualified immunity from malicious prosecution if facts supported arguable probable cause to charge, which "exists where, accounting for any new

---

[12] I realize that Plaintiffs contend that Defendant in fact viewed the video. (*See* Ps' Mem. 5.) Taking their version as true, the video supports probable cause.

[13] After Mr. Alberechtsen's statement and injuries provided Defendant with probable cause to arrest Plaintiffs, he was not required – at least by the Fourth Amendment – to watch the security video. *See Virgil*, 455 F. App'x at 40 ("The Constitution does not require police to follow every lead, explore and eliminate every theoretically plausible claim of innocence, or resolve all doubts about a victim's story before effecting an arrest and pursuing a prosecution.") (internal quotation marks omitted); *see also Williams*, 2012 WL 547508, at *9 (once probable cause established defendant "had no particular duty to conduct an extensive investigation . . . before swearing out a complaint"). Had he done so, it would not have dissipated or undermined the probable cause existing at the time of the arrest in any event.

information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the

defendant officer] to charge [the plaintiff]' with the crime in question.") (alterations in original)

(quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)); *Amore v. Novarro*,

624 F.3d 522, 536 (2d Cir. 2010) ("'Arguable probable cause exists if either (a) it was

objectively reasonable for the officer to believe that probable cause existed, or (b) officers of

reasonable competence could disagree on whether the probable cause test was met.'") (quoting

*Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)). Indeed, sorting out a brawl seems like the

quintessential "thicket" in which fear of liability ought not to "unduly inhibit officials in the

discharge of their duties." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001)

(internal quotation marks omitted). On these facts, it cannot be said that Defendant's "judgment

was so flawed that no reasonable officer would have made a similar choice," *Lennon v. Miller*,

66 F.3d 416, 425 (2d Cir. 1995), and so Defendant would be entitled to qualified immunity even

if he lacked probable cause to arrest. The malicious prosecution claim is thus subject to

dismissal on this alternative ground.

2.      Malice

Plaintiffs' Section 1983 malicious prosecution claim also fails because there is no

evidence of malice. "Under New York law, malice does not have to be actual spite or hatred, but

means only 'that the defendant must have commenced the criminal proceeding due to a wrong or

improper motive, something other than a desire to see the ends of justice served.'" *Lowth*, 82

F.3d at 573 (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)). While the lack of

probable cause "generally creates an inference of malice," *Boyd v. City of N.Y.*, 336 F.3d 72, 78

(2d Cir. 2003), there can be no such inference here, because there was probable cause to charge

Plaintiffs. Moreover, assertions like those made by Plaintiffs as to what steps an officer "could

15

have taken to improve [an] investigation . . . do not constitute evidence of malice." *Rizzo v. Edison, Inc.*, 172 F. App'x 391, 393 n.1 (2d Cir. 2006) (summary order).  Finally, Defendant's attempt to prompt Mr. Germosin to finger Mr. Diaz as the individual who hit Mr. Alberechtsen is insufficient, without some other evidence of impropriety, to create an inference of malice because such commonplace interrogation methods are not improper.  *See Armatas v. Maroulleti*, No. 08-CV-310, 2010 WL 4340437, at *15 (E.D.N.Y. Oct. 19, 2010) ("'[A]n egregious deviation from proper investigative procedures' . . . may be evidence of actual malice.") (quoting *Ramos v. City of N.Y.*, 729 N.Y.S.2d 678 (App. Div. 2001)).  As Plaintiffs submit no other argument regarding malice and I have found no other evidence of malice in the record, Plaintiffs' malicious prosecution claim must also be dismissed for lack of malice.

### C.  Plaintiffs' Section 1985 Claim

To prevail on their Section 1985 claim, Plaintiffs must establish: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (internal quotation marks omitted).  "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted).  Moreover, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks omitted).

16

Plaintiffs abandoned their Section 1985 claim by failing to raise any argument in opposition to Defendant's motion to dismiss this claim. *See Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases holding claims abandoned when plaintiffs did not oppose motions to dismiss or for summary judgment as to those claims). Even if Plaintiffs had opposed the motion, their Section 1985 claim would be dismissed because they presented no evidence that Defendant conspired with anybody to deprive them of equal protection of the laws. The only arguable evidence of such a conspiracy is that Defendant spoke with members of the group with which Plaintiffs fought before arresting Plaintiffs. Mere conversations do not, however, give rise to an inference of a conspiracy to achieve an improper purpose. *See Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998) ("series of communications" insufficient to give rise to inference of impropriety where inference was supported merely by "unsubstantiated speculation"). This is particularly true where Defendant spoke with these individuals for a clearly valid reason – here, investigating a potential crime. *See San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256 (2d Cir. 1984) (meetings prior to grand jury testimony insufficient to support Section 1983 conspiracy claim to submit false testimony where plaintiff did not submit "one shred of evidence in support of his conclusory assertion of conspiracy" beyond the fact of meetings). Accordingly, Plaintiffs' Section 1985 claim must be dismissed.

## III.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED

and all claims are dismissed.  The Clerk of Court is respectfully directed to terminate

Defendant's Motion, (Doc. 20), enter judgment for Defendant, and close the case.


**SO ORDERED.**

Dated: July 31, 2014
          White Plains, New York

_____
          CATHY SEIBEL, U.S.D.J.

18